NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARC GUTHARTZ,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>HACKENSACK TOWNSHIP et al,<br><br>　　　　　　　　　Defendants. | Civil Action No. 12-cv-03428-SDW-SCM<br><br><br>**OPINION**<br><br><br>February 22, 2016 |

**WIGENTON,** District Judge.

Before this Court are the summary judgment motions of Police Officer Bryan Ziegelhofer ("Defendant Ziegelhofer") and Police Officer Stephen Ochman ("Defendant Ochman") (collectively "Defendants"), of the Hackensack Township Police Department, pursuant to Federal Rule of Civil Procedure 56. Defendant Ziegelhofer filed his motion on December 8, 2015 (Dkt. No. 68), and Defendant Ochman filed his motion on December 10, 2015 (Dkt. No. 69). Plaintiff Marc Guthartz's ("Plaintiff") Brief in Opposition to Defendants' Motions for Summary Judgment ("Opposition") was then due on December 21, 2015.

On December 15, 2015, Plaintiff submitted a letter requesting that this matter be adjourned until April 2017 and this Court subsequently issued an Order denying that request. (Dkt. No. 75). Despite Plaintiff's failure to submit his Opposition by the December 21, 2015 deadline, Magistrate

1

Judge Steven Mannion issued an Order on December 28, 2015, notifying Plaintiff that Plaintiff's Opposition would be due on January 8, 2016. (Dkt. No. 77.) Nonetheless, on January 5, 2016, this Court issued an Order granting another extension, changing the deadline for Plaintiff to file his Opposition from January 8, 2016, to January 20, 2016. (Dkt. No. 79.)

However, on January 12, 2016, Defendant submitted a letter asking for another extension of time to submit his Opposition. (Dkt. No. 80.) On January 14, 2016, this Court issued an Order reiterating that Plaintiff's Opposition would be due on January 20, 2016. (Dkt. No. 83.) As Plaintiff failed to comply with this Court's orders and did not submit his Opposition before the January 20, 2016 deadline, Defendants' motions are deemed unopposed.[1]

These motions for summary judgment are decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the motions are **GRANTED**.

## I. JURISDICTION AND VENUE

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## II. BACKGROUND

Plaintiff filed his Complaint with this Court on June 6, 2012, seeking damages from Defendants pursuant to 42 U.S.C. § 1983.[2] According to the Complaint, Defendants used excessive force by "repeatedly striking [Plaintiff] in the head . . . with a metal object" while arresting Plaintiff on June 16, 2010. (Compl.) This arrest was preceded by Plaintiff leading

---

[1] Plaintiff filed a Brief in Opposition on February 8, 2016, nearly three weeks after the revised January 20, 2016 deadline. (Dkt. No. 85.) As Defendants noted in their subsequent letters to this Court, Plaintiff submitted his Opposition late despite this Court's repeated extensions which allowed Plaintiff ample time to file. Thus, this Court rejects Plaintiff's Opposition as "not filed within the time specified" pursuant to L.Civ.R. 7.1(d)(7).
[2] Additional defendants were dismissed from this matter on August 1, 2012 (Dkt. No. 2), and May 15, 2013 (Dkt. No. 51.)

2

Defendants on a lengthy, drug and alcohol fueled car chase in which Plaintiff collided with several vehicles, including police cruisers, and destroyed government and personal property.

Late in the evening of June 15, 2010, Plaintiff ingested approximately two to three grams of cocaine and nearly a pint of whiskey before leaving his residence and driving to purchase cigarettes in Teaneck, New Jersey. (Ochman Statement Undisputed Material Facts ("SUMF") ¶¶ 4-6; Guthartz Dep. 17:19-24, 18:24-20:7.) While driving, Plaintiff nearly struck a police officer's vehicle and the officer driving that vehicle activated his emergency lights and sirens to signal that Plaintiff should stop. (SUMF ¶¶ 7-8.) At that point, Plaintiff began to flee. (*Id*. at ¶ 10; Guthartz Dep. 23:2-8; 24:3-7.)

During the initial portion of the ensuing chase in Teaneck, New Jersey, Plaintiff's vehicle struck two parked vehicles, a porch, and a police car. (SUMF ¶ 11; Guthartz Dep. 25:19-26:5, 27:9-28:18, 30:10-34:18.) As Plaintiff continued to flee he crossed into the City of Hackensack where Defendants and other Hackensack police officers joined the pursuit. (SUMF ¶¶ 12-13.) During the Hackensack portion of the chase, Plaintiff's vehicle initially struck two police vehicles (including Defendant Ochman's vehicle), causing injuries to one officer. (SUMF ¶¶ 14, 16.) After a brief stop in a Target parking lot Plaintiff backed his vehicle into a third Hackensack police vehicle. (SUMF ¶ 19, 21.) Shortly after striking the third Hackensack police vehicle Plaintiff lost control of his vehicle and struck a street sign, immobilizing his vehicle. (SUMF ¶ 22; Guthartz Dep. 56:18-57:13.)

Once Plaintiff's vehicle was immobilized Defendants began to approach and ordered Plaintiff out of the vehicle. (SUMF ¶¶ 23; Guthartz Dep. 60:9-13, 61:9-63:19.) However, Plaintiff continued his attempts to use the vehicle to flee. (SUMF ¶ 24; Guthartz Dep. 59:24-60:22.) Although Plaintiff claims that he put his hands in plain sight at this point, he is generally unable to

3

recall specific details of his apprehension and admits that he may have flailed his arms. (SUMF ¶¶ 25, 27; Guthartz Dep. 64:14-65:2, 118:18-119:8.) As Defendants attempted to subdue Plaintiff, Defendant Ziegelhofer sprayed Plaintiff with pepper spray and attempted to remove the keys from the vehicle. (SUMF ¶ 30; Guthartz Dep. 70:18-71:23; Carlino Cert. Ex. G). In addition, Defendants handcuffed Plaintiff and forcibly removed him from the vehicle. (Carlino Cert. Ex. H.) According to Plaintiff, Defendants punched, kicked, and struck Plaintiff in the face with an object, after pulling Plaintiff from the vehicle. (Guthartz Dep. 73:16-74:2). In addition, after being taken to Hackensack Police Headquarters, Plaintiff was transported to Hackensack University Medical Center where he was treated for a scalp laceration and contusion. (SUMF ¶¶ 35, 37; Carlino Cert. Ex. J.) The hospital also found that Plaintiff's blood tested positive for alcohol, at a concentration of .097, and for cocaine. (SUMF ¶ 38; Carlino Cert. Ex. J.)

Ultimately, Plaintiff plead guilty to two counts of eluding, two counts of aggravated assault causing bodily injury, and one count of criminal mischief, for which he was sentenced to between five and eight years in New Jersey State Prison on each count to run concurrently. (Carlino Cert. Ex. P.)

Plaintiff subsequently filed his Complaint in this matter on June 6, 2012, seeking relief on the ground that the Defendants' strikes to Plaintiff's head constituted excessive force. (Compl.) On August 1, 2012, this Court found that Plaintiff's Complaint sufficiently "state[d] an excessive force claim under the Fourth Amendment and 42 U.S.C. § 1983 against defendants [Ochman and Ziegelhofer]." (Dkt. No. 4.)

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

4

56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." (*Id.* at 248.) A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of

its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 Fed. Appx. 548, 554 (3d Cir. 2002).

### IV.     DISCUSSION

Plaintiff alleges Defendants used excessive force during the course of arresting Plaintiff by "repeatedly striking [Plaintiff] in the head (skull) and above the left eye with a metal object causing [Plaintiff] to be transported to Hackensack University Medical Center." (Compl.) Plaintiff brought suit against Defendants pursuant to 42 U.S.C. § 1983 which "provides private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). As Defendants are police officers who were acting in their official capacity during Plaintiff's arrest, Defendants would be liable for any violation they caused to Plaintiff's constitutional rights, "unless they are protected by qualified immunity." *Curley v. Klem,* 499 F.3d 199, 206 (3d Cir. 2007). "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Accordingly, Defendants

6

contend that they should be shielded from liability based on qualified immunity and that they are therefore entitled to summary judgment. (*See* Ochman Br. Supp. Mot. Summ. J. 12-19; Ziegelhofer Br. Supp. Mot. Summ. J. 19-34.)

In order to determine whether Defendants are entitled to summary judgment based on qualified immunity, this Court must apply a two-step analysis. *See Santini*, 795 F.3d at 417. In step one, this Court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer[s'] conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). To determine whether a defendant's conduct violated a constitutional right in an excessive force case, the court must use "the Fourth Amendment's objective reasonableness test." *Santini*, 795 F.3d at 417 (first citing *Graham v. Connor,* 490 U.S. 386, 395 (1989); then citing *Curley,* 499 F.3d at 206–07). The objective reasonableness test is a fact-sensitive inquiry into "whether the totality of the circumstances justifie[s] a particular sort of ... seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). Specifically, the Supreme Court has articulated three factors that must be considered in determining whether the use of force was reasonable in a given case: 1) "the severity of the crime at issue," 2) "whether the suspect pose[d] an immediate threat to the safety of the officers or others," and 3) "whether [the suspect] actively resist[ed] arrest or attempt[ed] to evade arrest by flight." *Graham*, 490 U.S. at 396. The Third Circuit expanded this inquiry in *Sharrar v. Felsing*, to include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." 128 F.3d 810, 822 (3d Cir. 1997). Moreover, this Court must analyze the objective reasonableness of the officers' behavior "from the perspective of the

7

officer[s] at the time of the incident and not with the benefit of hindsight." *Santini*, 795 F.3d at 417; *see also Curley*, 499 F.3d at 206-07 ("The relevant inquiry is 'the reasonableness of the officer[s'] belief[s] as to the appropriate level of force[,]' which 'should be judged from [the officers'] on-scene perspective,' and not in the '20/20 vision of hindsight.'" (citation omitted)).

If after performing step one of the qualified immunity analysis, this Court finds that Defendants violated Plaintiff's constitutional rights by using excessive force, this Court must still determine under step two of the analysis whether Defendants should be protected from individual liability. This determination is made under another objective and fact specific reasonableness inquiry, but this time the question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Santini*, 795 F.3d at 417 (In step two of the qualified immunity analysis the court "must determine whether the right violated by the officer was clearly established at the time of the violation."). The purpose of this inquiry is to protect an officer from liability who, although having committed a wrong, did so based on "a reasonable mistake about the legal constraints on his actions." *Curley*, 499 F.3d at 207. As explained in *Curley v. Klem*,

> Thus, the first step of the analysis addresses whether the force used by the officer was excessive, and therefore violative of the plaintiff's constitutional rights, or whether it was reasonable in light of the facts and circumstances available to the officer at the time. This is not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity. The second step is the immunity analysis and addresses whether, if there was a wrong, such as the use of excessive force, the officer made a reasonable mistake about the legal constraints on his actions and should therefore be protected against suit.

499 F.3d 199, 207 (3d Cir. 2007).

In the instant case, summary judgment is appropriate based on qualified immunity. Under step one of the two-step analysis, even when the facts alleged are considered in a light most

8

favorable to Plaintiff, a reasonable factfinder could not find that Defendants violated Plaintiff's constitutional rights by using excessive force. In other words, when analyzed under the factors outlined by the Supreme Court and Third Circuit, Defendants' use of force was objectively reasonable.

In this instance, Plaintiff's act of leading police on a cocaine and alcohol fueled car chase through two towns, while crashing into numerous vehicles (including police cruisers), and causing both property damage and physical injuries was severe. In addition, at the time of his arrest, Plaintiff was still attempting to flee (SUMF ¶ 24; Guthartz Dep. 59:24-60:22) and, thus, "posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase." *Scott v. Harris*, 550 U.S. 372, 384 (2007) (describing the actions of a Plaintiff who led defendant police officers on a similar car chase). Defendants reasonably believed Plaintiff to be dangerous and the chase carried on for an extended period of time. (Carlino Cert. Ex. B.) In contrast, it is less clear that Defendants' behavior posed a risk of serious injury to Plaintiff and, even if it had, that conduct occurred while Defendants attempted to arrest Plaintiff and end the chase. (SUMF ¶ 24; Guthartz Dep. 59:24-60:22). The Supreme Court has repeatedly held that higher levels of force, even deadly force, when used by police officers against a suspect in an ongoing car chase is reasonable. *See, e.g*, *Scott*, 550 U.S. at 381-83. Under these circumstances, weighing the risk that Plaintiff posed to the police officers pursuing him, and potentially to innocent bystanders, against the force Defendants used to subdue Plaintiff, no reasonable jury could find that Defendants' actions were not objectively reasonable under the circumstances. Thus, Defendants' conduct did not violate Plaintiff's constitutional rights and summary judgment is appropriate.

In addition, although this Court need not reach step two of the qualified immunity analysis, it bears noting that even if Defendant's conduct did constitute excessive force, Defendants should still be protected from individual liability based on qualified immunity. Under step two of the qualified immunity analysis, this Court must determine whether it would be clear to a reasonable officer that Defendants' conduct of repeatedly striking Plaintiff during his arrest was unlawful under the circumstances. *See Santini*, 795 F.3d at 417. In other words, the Defendants should be protected by qualified immunity unless their conduct violated a "clearly established statutory or constitutional right[] of which a reasonable person would know." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Furthermore, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right'. . . . [and, thus,] qualified immunity protects '"all but the plainly incompetent or those who knowingly violate the law."' *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations omitted).

In this instance, Defendants are alleged to have repeatedly struck Plaintiff during his arrest. (Compl.) An arrest which was preceded by a lengthy car chase that destroyed property, injured at least one police officer, and placed the lives of innocent bystanders, the police officers, and Plaintiff at risk. Yet, in applying step two of the qualified immunity analysis, this Court must ask "whether existing precedent placed the conclusion that [Defendants] acted unreasonably in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011)). It does not. Instead, the Supreme Court has repeatedly held that using greater force than Defendants used in this instance is objectively reasonable to end a car chase or apprehend a car chase suspect. *See, e.g*, *Scott*, 550 U.S. at 386. In fact, the Supreme Court has never found the use of force, or even "deadly force in connection with a dangerous car

chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity." *Mullenix*, 136 S. Ct. at 310. Although Plaintiff may not have reached the high speeds reached by plaintiffs in similar cases, Plaintiff's behavior nonetheless placed numerous lives in danger and Defendants used far less force than shooting Plaintiff or ramming his vehicle. *See Mullenix*, 136 S. Ct. at 307; *Scott*, 550 U.S. at 375. Thus, this Court "cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have perceived a sufficient threat and acted as [Defendants] did." *Mullenix*, 136 S. Ct. at 310 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Therefore, even if Defendants' actions had risen to the level of excessive force unreasonable under the Fourth Amendment, applying qualified immunity in this instance would still be appropriate under step two of the qualified immunity analysis. Accordingly, this Court will grant Defendants motions for summary judgment.

## IV. CONCLUSION

For the reasons stated above, Defendants' motions for summary judgment are **GRANTED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:     Clerk
cc:       Steven C. Mannion, U.S.M.J.
           Parties